IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.   Criminal No. 2:24cr108

LUCAS KELLER,

    Defendant.

### DEFENDANT'S UNOPPOSED MOTION FOR ACCESS TO RELEVANT PORTIONS OF THE UNITED STATES PROBATION OFFICE'S FILE

Lucas Keller, through counsel, without opposition by the United States, and pursuant to this Court's October 18, 2024, Scheduling Order (ECF No. 10), respectfully moves this Court for copies of portions of the United States Probation Office's ("USPO") file that are relevant to the instant federal indictment. ECF No. 1. The defense contends that the relevant portions of the USPO's file include, but are not limited to, all documents, reports, memoranda, recordings, notes, and/or communications related to Mr. Keller's alleged possession of unauthorized and authorized electronic devices and the searches of Mr. Keller's vehicle, person, residence, and electronic devices, including the USPO "Case Report" referenced in the search warrant application.

### RELEVANT FACTUAL AND PROCEDURAL HISTORY

On September 25, 2024, Mr. Keller was named in a five-count indictment alleging three counts of Receipt of Images of Minors Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2), and two counts of Possession of Images of Minors

1

Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)B). ECF No. 1.

On October 9, 2024, Mr. Keller made an initial appearance before the Honorable U.S. Magistrate Judge L. Leonard. *Id.* at 5. Mr. Keller's request for court-appointed counsel was granted and the Federal Public Defender's Office was appointed. *Id.* Following a status conference on October 18, 2024, a jury trial was set for December 18, 2024. ECF No. 10. The Court also set a seven-day deadline for any defense motion related to the parties' request for USPO's file, with a government response due three days later. *Id.*

Mr. Keller is currently on supervised release for a prior conviction of possession of child pornography. *See United States v. Lucas Keller,* Case No. 2:19cr105. As a condition of supervised release, Mr. Keller is required to comply with the following relevant special condition:

> **Special Condition No. 13:** Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall submit their person, property, house, residence vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. **The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.**

*Id.*, ECF No. 68, at 5. (emphasis added).

On October 10, 2024, the government provided the defense with a copy of a search warrant granting Homeland Security agents permission to search three devices allegedly belonging to Mr. Keller. *See* Exhibit A (Search warrant). In the application in support of the search warrant, Homeland Security Agent Kristen Brewer affirms that based on "this Special condition[1] and reasonable suspicion, this Court approved a USPO search of Mr. Keller's residence located in Portsmouth, VA 23702." Exh. A, at 17. The search warrant application does not outline what facts or circumstances the USPO relied upon to establish "reasonable suspicion," or what specific authorization the Court gave to the USPO. Upon finding three alleged unauthorized devices during the search, USPO Officers then conducted a "preliminary investigation of the devices," wherein they discovered several alleged sexually explicit videos in an application on one of the phones. *Id.*, at 18. Agent Brewer further states that "The USPO took photographs of these video thumbnails," which she then later reviewed and determined to be child exploitative images. *Id.*, at 18-19.

The government also provided a Homeland Security Investigations Report of Investigation ("ROI") in discovery. *See* Exhibit B (ROI). This ROI states that, "On April 8, 2024, the United States District Court in the Eastern District of Virginia, Norfolk Division approved a United States Probation Office (USPO) search of KELLER's residence located at . . . Portsmouth, VA 23702." *Id.* The ROI does not detail what facts or circumstances

---

[1] Agent Brewer lists the special condition as "Condition 10," but it appears identical to special condition 13, outlined above.

3

were relayed to the United States District Court Judge or what specific authorization was given to the USPO regarding the parameters of the search. However, there is a note that says, "For full detail of the search of KELLER's residence refer to USPO case report." *Id.*, at 2. The parties do not presently have a copy of this "USPO case report."

On October 11, 2024, defense counsel sent an email to Senior United States Probation Officer Courtney Lopez requesting the USPO case report as well as the statement of reasonable suspicion submitted to the Court. The government similarly requested any documents related to the federal indictment. Sr. Officer Lopez responded that the parties would need a court order to release any confidential documents.

In a status conference hearing on October 18, 2024, defense counsel made a specific request for this information. The Court directed defense counsel to file a motion within seven days. ECF No. 10.

## LAW AND ARGUMENT

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A search of one's home is one of the most significant government intrusions policed by the Fourth Amendment, "the chief evil against which [it] is directed." *Lange v. California*, 594 U.S. 295, 303 (2021) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)).

A person on federal supervision maintains Fourth Amendment protection, even if his or her rights may be somewhat limited by probationary conditions. The United States Supreme Court has held that probationers and parolees are entitled to reduced rights

4

under the Fourth Amendment relative to the general population. *See United States v. Knights*, 534 U.S. 112, 122 (2001) (holding that "the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment"); *Samson v. California*, 547 U.S. 843 (2006) (addressing parole). But the Court has never squarely addressed the constitutionality of a warrantless search condition in a supervised release context, and the Fourth Circuit has not either. And as numerous courts have noted, "the supervised release system's differences from probation and parole necessitate additional constitutional protections." *United States v. Ka*, 982 F.3d 219, 228 (4th Cir. 2020) (Gregory, C.J., dissenting).

Without delving into the constitutionality of Special Condition 13, it is beyond dispute that the condition incorporates a "reasonable suspicion" requirement. Case No. 2:19cr105, ECF No. 68, at 5. In general, reasonable suspicion requires "a **particularized and objective basis** for suspecting the person [searched] of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (emphasis added). Here, Special Condition 13 requires a reasonable suspicion that Mr. Keller violated a condition of supervision and that the areas to be searched contain evidence of that violation.

In order to investigate the propriety of the searches, defense counsel must be able to examine the "particularized and objective basis" that was offered in support of the searches, as well as the scope of the authorization given and the scope of the actual searches. The same detailed information is necessary for the government to potentially

5

defend both searches. Without the specific facts underlying the searches, the parties cannot analyze and litigate their constitutionality.

While the USPO's records are generally kept confidential, there is a recognized exception for when the government relies on those records to prosecute a defendant. *See United States v. Donaghe*, 924 F.2d 940, 944 (9th Cir. 1991) ("We have held that failure to allow a probationer to view his probation file prior to a revocation hearing violates neither Fed. R. Crim. P. 32.1(a)(2)(B) nor due process *if the government does not use it as evidence against the probationer*.") (emphasis added) (citing United States v. Tham, 884 F.2d 1262, 1265 (9th Cir. 1989)). Here, the information sought is central to the instant prosecution of Mr. Keller, as it forms the basis of searches of his residence, vehicle, person, and electronics that allegedly found prohibited items and files.

There are also examples of courts either granting access to relevant portions of the USPO's files or granting *in camera* review to determine whether access was warranted. In *United States v. Stein*, the defense made a motion for certain USPO records it needed to cross-examine a cooperating witness at trial. *United States v. Stein*, 694 F. Supp. 2d 1231, 1241 (D. Kan. 2010). The Court found, "in the interest of justice, that the records should be disclosed to the defendant and the government." *Id*. Separately, the Ninth Circuit has recognized that a district court errs when it "fails to conduct an *in camera* review of the probation files of significant witnesses purposely to a timely request for *Brady* materials." *United States v. Alvarez*, 358 F.3d 1194, 1209 (9th Cir. 2004).

Here, the requested records are critically important. In normal circumstances—*i.e.*, if the searches had been undertaken by police instead of with the involvement of the

6

USPO—such records would be obtained by the government and provided to the defense without any thought or question. The parties routinely rely on the details of an investigation and related searches to determine what, if any, pretrial motions need to be filed. Such evidence is fundamental to all stages of the process.[2]

Here, the parties have little-to-no information concerning exactly what facts and circumstances were provided to the Court to establish reasonable suspicion for the warrantless search. Similarly, the parties do not know what exact authority was then given to the USPO in response to the information it provided to the Court. Finally, the parties have no details concerning what facts were relied upon by Agent Brewer when she swore out the search warrant affidavit. If Agent Brewer has seen the USPO case file, it seems logical that Mr. Keller and the government should also have a copy.

## CONCLUSION

Mr. Keller faces a 15-year mandatory minimum. The warrantless searches of his house, person, car, and electronic devices form the entire basis for the charges against him. For this reason, the defense respectfully asks this Court to authorize the inspection and copying of all portions of the USPO file that are relevant to the instant indictment. The government does not oppose this motion.

Respectfully submitted,

LUCAS KELLER

---

[2] Apart from any Fourth Amendment concerns, there may be due process implications if Mr. Keller cannot secure the information necessary to ensure his rights are vindicated and the protections written into his conditions of supervision are respected.

By: _____/s/_____
Sean C. Mitchell
Virginia State Bar No. 90922
Amanda C. Conner
Virginia State Bar No. 88317
Attorneys for Lucas Keller
Office of the Federal Public Defender
500 E. Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: 757-457-0800
Facsimile: 757-457-0880
amanda_conner@fd.org
sean_mitchell@fd.org