```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                         Norfolk Division

 3

 4    - - - - - - - - - - - - - - - - - -
                                         )
 5    UNITED STATES OF AMERICA,           )
                                          )
 6    v.                                  )  CRIMINAL ACTION NO.
                                          )  2:24cr108
 7    LUCAS KELLER,                       )
                                          )
 8            Defendant.                  )
                                          )
 9                                        )
      - - - - - - - - - - - - - - - - - -
10

11
                        TRANSCRIPT OF PROCEEDINGS
12                     (TELEPHONIC STATUS HEARING)

13                         Norfolk, Virginia

14                         October 31, 2024

15

16    BEFORE:  THE HONORABLE ELIZABETH W. HANES
                  United States District Judge
17

18

19    APPEARANCES:

20            UNITED STATES ATTORNEY'S OFFICE
              By:  Elizabeth M. Yusi
21                 Assistant United States Attorney
                   Counsel for the United States
22
              FEDERAL PUBLIC DEFENDER'S OFFICE
23            By:  Amanda Catherine Conner
                   Sean Carlton Mitchell
24                 Assistant Federal Public Defenders
                   Counsel for the Defendant
25
```

1          (Proceedings conducted via telephone commenced at
2    4:06 p.m.)
3          THE COURT:  Good afternoon, everyone.  This is
4    Judge Hanes.
5          Madam Clerk, can you call our next matter?
6          THE CLERK:  Yes, Your Honor.
7          Case number 2:24cr108, the United States of America
8    versus Lucas Keller.  Counsel for the government is
9    Elizabeth Yusi.
10         Ms. Yusi, is the government ready to proceed?
11         MS. YUSI:  We are.
12         Good afternoon, Your Honor.
13         THE CLERK:  And counsel for the defendant, I have
14   Amanda Conner and Sean Mitchell.
15         Ms. Conner, is the defendant ready to proceed?
16         MS. CONNER:  Defense is ready.
17         Good afternoon, Your Honor.
18         THE COURT:  Good afternoon.
19         THE CLERK:  And also, Your Honor, we have from
20   Probation Lance Hall and Courtney Lopez on the line.
21         PROBATION OFFICER HALL:  Yes, good afternoon.
22         PROBATION OFFICER LOPEZ:  Good afternoon, Your
23   Honor.
24         THE COURT:  All right.  Nice to have everyone.
25   Thank you all for being available so quickly.

1          Defendant filed a motion for access to certain
2    portions of the probation officer's file, and I granted that
3    motion, in part.  Essentially, I didn't want to provide you
4    what I thought you wanted, but it wasn't clear to me whether
5    there were other things you were asking for.
6          So, Ms. Conner, I think that I just want to make
7    sure I am clear on what you're asking for and we can talk
8    about it.  Do you want to address that?
9          MS. CONNER:  Sure, Your Honor.
10         MR. MITCHELL:  Yes, Your Honor.
11         MS. CONNER:  I think Mr. Mitchell is going to
12   actually address it, so I'll let him speak.
13         THE COURT:  Thank you.
14         Mr. Mitchell.
15         MR. MITCHELL:  Good afternoon, Your Honor.
16         So, I'm having a little bit of difficulty hearing
17   you, but I'll just try to be a little closer to the phone.
18         So, last -- last evening the defense received the
19   memorandum prepared by the probation office, and so from
20   that there are several items that we essentially ask the
21   Court to be provided.
22         And the first one, there is a reference to an
23   anonymous source's documentation -- and what else -- so that
24   is something that the defense believes would assist us in
25   representing Mr. Keller in scrutinizing whatever evidence

1   has been provided to support reasonable suspicion.
2           And then there is also a reference to memos and
3   notes made documenting that potential phone call from the
4   anonymous source.
5           There is also -- we would also like any report or
6   document prepared related to the, quote, investigative
7   resources, end quote, that link this particular phone number
8   to Mr. Keller and social media accounts.
9           THE COURT:  All right.  Hold on.  Hold on one
10  second, Mr. Mitchell.  Mr. Mitchell, are you in the car?
11          MR. MITCHELL:  I'm sorry?  Say that one more time,
12  Your Honor.
13          THE COURT:  Are you in a vehicle?
14          MR. MITCHELL:  I'm sorry.  I couldn't hear.
15          THE COURT:  Well, I --
16          MS. CONNER:  He just got out of court.  He just got
17  out of court.
18          THE COURT:  I'm having trouble hearing you as well,
19  Mr. Mitchell.  I don't know, I think if you're driving, I
20  definitely want you to pull over, but I think it might just
21  be helpful if you're using a speaker in a vehicle.  I'm
22  having difficulty hearing you as well.
23          MR. MITCHELL:  All right.  I'm sorry.  I was
24  leaving court and trying to meet the time deadline.  I will
25  pull over here in a moment.

1           Amanda, maybe I can go on mute and perhaps you can
2    address the Court?
3           MS. CONNER:  Yeah, I'll talk, that's fine.
4           Okay.  So, just starting over with what he said.
5    In the memo, there was a reference to the anonymous
6    source's, quote, documentation, end quote, and enclosed
7    photos, end quote.
8           So, we believe that we would be entitled to any
9    information about the anonymous source that, you know, forms
10   a basis for reasonable suspicion.  Whether the unanimous
11   source is reliable or unreliable is certainly something that
12   we would -- that is necessary in establishing reasonable
13   suspicion.
14          And I have just a Supreme Court case that talks
15   about anonymous tips and that's --
16          THE COURT:  Wait.  Hold on.  Hold on.
17          No, no, no, no.  I'm not going to decide it like
18   that.  Why don't you go through your list so I can
19   understand what you're asking for, so it's clear to me what
20   the list is, and then let's talk about how we're going to
21   figure out what gets turned over.
22          MS. CONNER:  Oh, okay.
23          THE COURT:  I think that would be more helpful.
24          MS. CONNER:  Okay.
25          THE COURT:  So, I got that.

```
 1              Let me just clarify.  You mentioned reference to an
 2   anonymous source and the documentation, and then you
 3   subsequently said information about the anonymous source.  I
 4   think it maybe is captured in point two, which is you're
 5   asking, then, if probation made notes or wrote memos
 6   regarding any conversation with this anonymous source.
 7   You're asking for any documentation provided by the
 8   anonymous source as well as any memos or notes reflecting
 9   the conversation between the probation officer and the
10   anonymous source; is that right?
11              MS. CONNER:  Correct.
12              THE COURT:  Okay.  And would that capture your
13   categories one and two?
14              MS. CONNER:  Yes.  I think also I had said photos,
15   but I think that would probably also be included under
16   documentation.
17              THE COURT:  All right.  Okay.  Do you want to give
18   us three, then?
19              MS. CONNER:  Sure.  Any document or report that was
20   prepared related to what they reference in their memo as,
21   quote, investigative resources that they used, unquote, that
22   links the phone number to Mr. Keller and social media
23   accounts.
24              THE COURT:  Okay.
25              MS. CONNER:  The next one would be any memos or
```

```
 1   notes or other documentation related to the, quote,
 2   preliminary investigation, unquote, of the devices.
 3           THE COURT:  Say that again.
 4           MS. CONNER:  Memos or notes or other documentation
 5   related to the preliminary investigation that they did on
 6   the device before they obtained a search warrant.
 7           THE COURT:  Okay.
 8           MS. CONNER:  There is some reference to Probation
 9   Officer Branch-Jackson's involvement, and so if there is any
10   -- I did not see him in the search warrant, so I don't know
11   if he -- if he -- if there is any communications with him
12   about searching the device before authorization.  I would
13   request any communications with him as well.
14           THE COURT:  What do you mean?  I'm not clear when
15   you say "communications with him."  With him and whom?
16           MS. CONNER:  So, I assume with the officer, Senior
17   Officer Lopez.  There is a reference in the memo to
18   having -- let me just pull it up, I'm sorry.  Here it is.
19           So, I guess they talked.  If the Court approves the
20   search, the plan is to enlist the assistance of Senior
21   United States Probation Officer Cybercrime Specialist
22   Marquis Branch-Jackson, as he has tentatively agreed to
23   conduct a forensic search on the unapproved smartphone
24   device.  And so, I would ask for any communications about
25   the agreements that they made to search the devices prior to
```

```
 1   the search warrant.
 2           THE COURT:  Okay.
 3           MS. CONNER:  There is also a mention of unapproved
 4   devices, of course, in the memo.  And I would just want any
 5   documents or memos related to any approved phones or phone
 6   numbers.
 7           THE COURT:  Okay.
 8           MS. CONNER:  Okay.  One second.  I'm just pulling
 9   up another place I had this written down.  One second.
10           Okay.  They reference a couple of times U.S.
11   Probation Officers Search and Seizure Policy that's from
12   2020, and we would request a copy of that.
13           THE COURT:  Okay.
14           MS. CONNER:  And then there is -- finally, there is
15   a note about details of Senior Officer Lopez's interviews
16   with Mr. Keller and others, which I think Senior Officer
17   Lopez sought permission to be released to law enforcement
18   agencies in the end of her memo, so anything that they
19   wanted, you know, that referenced interviews with
20   Mr. Keller, of course.
21           THE COURT:  You said interviews with Mr. Keller,
22   but then you also said others.  Do you --
23           MS. CONNER:  Yes.
24           THE COURT:  I guess you're really qualifying it as
25   others that were released to law enforcement agencies, or is
```

1  it some other category?
2           MS. CONNER:  Well, I guess I don't know.  So,
3  Page 4 said -- it says that they "respectfully request and
4  recommend that Your Honor authorize probation," et cetera,
5  et cetera, "to" -- and then subsection C -- "release to law
6  enforcement officers and agencies assisting probation any
7  items seized during the search, including this memorandum
8  and details of this writer's interviews with the defendant
9  and others."
10          THE COURT:  Okay.
11          MS. CONNER:  So, our position is anything that they
12 sought to be released to law enforcement or other agencies
13 should be released to us and the government.
14          THE COURT:  All right.  Is that everything?
15          MS. CONNER:  I think that's it.  I had asked the
16 government for this, and I don't know if probation has this,
17 so I'll just -- my understanding is there was other law
18 enforcement present during the search that potentially has
19 body worn camera or something.  So, if they have any
20 memorandums or notes about who else was present during the
21 search, names of officers, we would like that because we
22 don't know who else was there.
23          THE COURT:  Okay.  So, it seems -- I would
24 generally put this I think in a couple of different
25 categories, one being -- hold on one second.  Let me look at

1   it.  The first category which would encompass, I think, 1,
2   2, 3, 4, and possibly 7, relating to cause to search, and
3   then another section which I think would be 5 and maybe 9,
4   relating to the actual search itself or the process of the
5   search.
6           Number 6 is sort of different, that, to me, I think
7   potentially, I don't know, would go to -- it could go to
8   cause.  I don't know if it could be a defense as well
9   depending on -- I don't know what your theory on that would
10  be exactly.
11          I want to make sure you're given everything you're
12  entitled to, but obviously there is -- I think there is kind
13  of a different set of case law that deals with the probation
14  file, and so I'm not especially clear on, you know, that
15  case law.  And so, I guess my hesitation is I would want to
16  make sure that I understand what you're asking for and then
17  the legal basis to have probation turn it over, and make
18  sure that I understand that before I order something.
19          It sounds like you have done some research, but
20  have you had a case where this has occurred in this court in
21  the past?
22          MS. CONNER:  I had a case in Newport News where a
23  client with similar circumstances was on supervised release
24  for child pornography and got a new indictment, and I know
25  that we had asked to be able to view some -- it wasn't

1  really the same.  It was a consent.  So, there wasn't
2  anything about a search, but I know there were some issues
3  about records that they had and so we were permitted.  It
4  was Judge Davis.  And the case was United States versus
5  Elmer Eychaner, E-y-c-h-a-n-e-r.  I don't recall the case
6  number, but it was 2017 or '19 or something -- 2018.  I do
7  know we were permitted to go to probation to review, like,
8  certain records that they had, but, again, it wasn't really
9  the same, so they weren't using those things in a
10 prosecution.
11         And I know Sean and I, and we had another, a third
12 lawyer in my office trying to research any relevant cases or
13 anything on point, and there is very little, if anything, on
14 point.  You know, we cited in our motion like anything we
15 could find that was sort of similar, and it seemed to be
16 that the difference in his regular supervised release
17 context and -- you know, here we have a prosecution -- is
18 that in a supervised release context you may not be entitled
19 to it because the person is, you know, in the supervisory
20 role of the probation officer, but if that information is
21 going to be, you know, used against the person, it's -- you
22 know, it's a little bit different.  And here I think we're
23 just looking at a situation where the probation officer has
24 two hats, the supervisory role and the assisting the Court,
25 but in a -- very much a true investigative role.

1           And in an ordinary case, all of this information
2    that we're asking for the government would have from the
3    investigating officer, and they would be required to turn it
4    over to us under Rule 16.  And I just --
5           THE COURT:  Hold on a second.  Wait one second on
6    that point.  Because, for example, the reference to an
7    anonymous source, if that appeared in a search warrant, I
8    don't know that that would be turned over under Rule 16.
9    There is obviously precedent on that point.
10          MS. CONNER:  Well, yes.  I mean, it's the
11   government's burden to establish, you know, the reliability
12   or -- to establish the reliability but that, you know, they
13   can establish reasonable suspicion.
14          I don't think this is a situation where nobody
15   knows who the anonymous source is.  We all know who it is,
16   so it's not like a protection problem.  It's his girlfriend.
17          But I think if we're going to be challenging, you
18   know, reliability, we don't -- basically, the anonymous
19   tipster is the basis where everything starts pretty much,
20   and so there is this information that they provide to the
21   probation officer, including screenshots of something.  I
22   mean, how are we able to establish whether information is
23   reliable, whether it's true?  You know, how can we challenge
24   that, or how can the Court assess that without, you know,
25   the parties being able to see that?

1        THE COURT: Right.
2        Okay. Let me ask you, Ms. Yusi, I'll start with
3 the question I asked Ms. Conner regarding whether or not
4 you've been involved in a matter in which this type of issue
5 has come up in this court before. Have you?
6        MS. YUSI: We have had -- we have had probationers
7 end up being, being charged once again. I have not been in
8 a situation where probation -- where the defense counsel was
9 asking for all of probation's notes and things like that.
10 The only thing similar was in an SRV context. At one point
11 the Court in one of those did allow us to have a copy of
12 the -- I think it's the chronology, the relevant chronology
13 involved in the SRV, but that was the only time that I have
14 ever been in a situation where they're asking for this sort
15 of thing. But in particular, you know, and even outside of
16 the probation, you know, in terms of policies and things
17 like that, you know, we would not necessarily be turning
18 that over from an agency.
19        THE COURT: The search and seizure policies?
20        MS. YUSI: Correct.
21        THE COURT: All right. I mean, obviously I want to
22 ensure that defendant has the discovery that they're
23 entitled to, but as I think everyone has recognized, it's a
24 unique circumstance and it's not one which I've encountered
25 before, and so frankly I'm not especially clear on the

1     instructions, if there are any, from the Fourth Circuit or
2     case law, and I think I would benefit from that.
3            I think I understand from your briefing,
4     Ms. Conner, that you agree that the Court can review *in*
5     *camera* the file or the requested documents and determine
6     after an *in camera* review what should be turned over.  Did I
7     understand that right?
8            MS. CONNER:  Yes, Your Honor.  I think some of the
9     cases that we cited there was an *in camera* review to
10    determine whether any of it was relevant, and so, you know,
11    certainly we think that that's permitted, yes.
12           THE COURT:  Okay.  I think I would prefer to have
13    some briefing, in part because when I was reading your memo
14    or your motion previously, it primarily focused on the
15    justification for the search, and I think, then, there are
16    some additional categories which I now understand you're
17    asking for, and I have not focused on those, but I think the
18    rationale may also be slightly different, and so I think I
19    would benefit from briefing.
20           I want to make sure you have enough time, given
21    that I don't think this is something you all have
22    encountered before.  How much time do you think you need to
23    put something together?
24           MS. CONNER:  Probably at least a week would be --
25    just because of my schedule -- a week would be great if the

1   Court would give us that.
2              THE COURT:  That would be fine.  What I'll do --
3              MS. CONNER:  Maybe next Friday.
4              THE COURT:  Yes, I was going to say -- so by end of
5   day November 8th.
6              And then --
7              MS. CONNER:  Okay.
8              THE COURT:  -- Ms. Yusi, end of day November 15th,
9   does that work okay for you?
10             MS. YUSI:  Yes, that's fine.
11             THE COURT:  All right.  I don't necessarily think a
12  reply is necessary but if for some reason you felt that one
13  was necessary, then, we'll do November 20th for that.
14             MS. CONNER:  Okay.
15             THE COURT:  Is there anything else, Ms. Conner,
16  that you think we need to address?
17             MS. CONNER:  Not on this, no.
18             THE COURT:  Anything else in the case?
19             MS. CONNER:  Well, I just wanted -- I don't know if
20  the Court is aware, I just wanted to let the Court know that
21  Mr. Keller has been to the hospital twice since the case
22  began recently, and my understanding is that he has been
23  diagnosed, according to the marshals, with a traumatic brain
24  injury.  So, I do think that that may implicate other
25  scheduling matters for us to be able to communicate with him

```
 1   and figure out what's going on.  So, I just wanted to give
 2   the Court a heads-up that we're still figuring all of that
 3   out, trying to get records and stuff.  So, as far as other
 4   deadlines that we have set, trial dates and stuff, I just
 5   wanted to give the Court a heads-up that we may be making a
 6   motion on that.
 7           THE COURT:  All right.  Is the traumatic brain
 8   injury something that has been existing or is new based on
 9   something that happened?
10           MS. CONNER:  Yeah.  He got assaulted at the jail
11   last week, and so it's been pretty -- it's not been good.
12           THE COURT:  All right.  I'm sorry to hear that.
13           You filed a motion.  That is going to toll the
14   speedy trial.  I think it's going to take us a bit of time
15   to resolve that.  And certainly, if you're not able to be in
16   contact with your client given his medical circumstances, it
17   may just be that if you need to just set -- it may just be
18   simplest to set a status call or ask to set a status call
19   with me, and we can make sure that I understand what's
20   happening with him, and if you need to make any motions, you
21   can do it during that status call.
22           MS. CONNER:  Okay.  Very good.  Thank you so much.
23           THE COURT:  Ms. Yusi, anything you need?
24           MS. YUSI:  No, nothing from the government.  Thank
25   you.
```

```
1              THE COURT:  All right.  Very well.  Well, thank you
2    all for your time.  I appreciate it.
3              MS. CONNER:  Thank you.
4              MR. MITCHELL:  Thank you, Your Honor.
5              PROBATION OFFICER HALL:  Thank you, Your Honor.
6              (Proceedings concluded at 4:32 p.m.)
7
8                            CERTIFICATION
9
10       I certify that the foregoing is a correct transcript
11   from the record of proceedings in the above-entitled matter.
12
13
14              _____/s/_____
15                        Jill H. Trail
16                        November 4, 2024
17
18
19
20
21
22
23
24
25
```