IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.  Criminal No. 2:24cr108

LUCAS KELLER,

      Defendant.

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW re:
UNOPPOSED MOTION FOR ACCESS TO RELEVANT PORTIONS OF THE
UNITED STATES PROBATION OFFICE'S FILE**

Lucas Keller, through counsel, has requested permission to inspect and copy certain portions of the USPO file that are relevant to his federal prosecution. ECF No. 11. The government does not oppose the request. On October 31, 2024, the Court ordered supplemental briefing on the relevant authority and the rationale behind each category of requested materials. ECF No. 13. Mr. Keller submits this memorandum addressed to those topics.

    **I.**    **Legal framework**

As it turns out, the Judicial Conference of the United States has adopted regulations governing "the production or disclosure of official information or records by the federal judiciary[.]" Guide to Judiciary Policy (GJP), Vol. 20, Ch. 8, § 810.10(a)(1). These procedures appear to be used sporadically, and the relevant volume of the Guide to Judiciary Policy—available at https://www.uscourts.gov/sites/default/files/vol20-ch08.pdf—is not readily discoverable by navigating the U.S. Courts website. Counsel did not come across these procedures until after the Halloween status conference.

These regulations apply to the USPO, which is a component of the federal judiciary. *Id.* § 810.40; *see id.* § 840(b)(3) (contemplating requests to "probation and/or pretrial services"). The regulations seem concerned primarily with requests from third parties, such as subpoenas issued in another jurisdiction. However, Mr. Keller's motion qualifies as a "request" under § 810.30, which defines the term to mean, in relevant part, "any other request by whatever method, for the production, disclosure, or release of information or records by the federal judiciary," including "requests for voluntary production or testimony in the absence of any legal process."

A request must include "a written statement" that explains the nature of the records sought, the relevance of the records to other legal proceedings, and the reasons why the records or the information therein are not readily available from other sources. *Id.* § 830(a). The explanation must be sufficient to allow an informed decision regarding disclosure, and failure to provide a sufficient explanation may serve as grounds to deny a request. *Id.*

The decision whether to disclose records rests with the "determining officer." *Id.* § 840. When, as here, a request is made in the form of a motion, the determining officer is the judicial officer to whom the request is made.[1] *Id.* § 840(b)(1); *see also, e.g.*, ECF No. 520-2 in *Bistrian v. Levi*, No. 2:08-cv-3010 (E.D. Penn. April 8, 2022), at 7 (noting, in prisoner litigation, the court had applied the GJP regulations and "Judge Dubois took an active

---

[1] If Mr. Keller had instead submitted a formal request to the USPO, the determining officer would be the chief probation officer, who would then consult with the chief judge regarding the proper response to the request. *Id.* § 840(b)(3).

role in supervising the disclosure of U.S. Probation information related to" the petitioner). In deciding whether to authorize disclosure, the determining officer must consider "the effect in the particular case, as well as in future cases generally, which . . . producing records will have on the ability of the federal judiciary or federal juridical personnel to perform their official duties." GJP, *supra*, § 850(a). The regulation lists sixteen factors that may be relevant to this analysis:

1. The need to avoid spending the resources of the United States for private purposes, to conserve the time of federal judicial personnel for the performance of official duties, and to minimize the federal judiciary's involvement in issues unrelated to its mission.

2. Whether the testimony or production of records would assist the federal judiciary in the performance of official duties.

3. Whether the testimony or production of records is necessary to prevent the perpetration of fraud or injustice in the case or matter in question.

4. Whether the request is unduly burdensome or is inappropriate under applicable court or administrative rules.

5. Whether the testimony or production of records is appropriate or necessary under the rules of procedure governing the case or matter in which the request arises, or under the relevant substantive law of privilege.

6. Whether the request is within the proper authority of the party making it.

7. Whether the request meets the requirements of these regulations.

8. Whether the request was properly served under applicable court, administrative, or other rules.

9. Whether the testimony or production of records would violate a statute, regulation, or ethical rule.

10. Whether the testimony or production of records would disclose information regarding the exercise of judicial or quasi-judicial responsibilities by federal judicial personnel in the decisional or deliberative process.

11. Whether the testimony or production of records would disclose confidential information from or pertaining to a presentence investigation report or pertaining to an individual's probation, parole, or supervised release, or would disclose any other information that is confidential under any applicable statute or regulation.

12. Whether the testimony or production of records reasonably could be expected to result in the appearance of the federal judiciary favoring one litigant over another, or endorsing or supporting a position advocated by a litigant.

13. Whether the request seeks testimony, records or documents available from other sources.

14. Whether the request seeks testimony of federal judicial personnel as expert witnesses.

15. Whether the request seeks personnel files, records or documents pertaining to a current or former federal judicial officer or employee, and

    A. the personnel files, records or documents sought by the request may be obtained from the current or former federal judicial officer or employee in question, or

    B. the personnel files, records or documents sought by the request would be made available to the requester with the written consent or authorization of the current or former federal judicial officer or employee in question.

16. Any other consideration that the determining officer designated in § 840(b) may consider germane to the decision.

*Id.* Clearly, not every factor will be relevant in every case. And because the factors assume knowledge of the contents of the requested materials, the determining officer presumably can inspect the requested materials, including through *in camera* review.

If the determining officer concludes that disclosure is not warranted, the relevant judicial personnel "must respectfully decline to comply with the request." *Id.* § 850(b). In appropriate circumstances, judicial personnel may call upon the Department of Justice or

retained legal counsel to seek appropriate relief, such as a motion to quash. *Id.* The regulations do not set forth procedures related to the granting of a request. Presumably, the determining officer instructs relevant judicial personnel to comply with the request. There is no requirement that the determining officer articulate his or her reasoning or issue a written response.

Turning to caselaw, the most salient Fourth Circuit case appears to be *United States v. Figurski*, 545 F.2d 389 (4th Cir. 1976), which is nearly 50 years old and not directly on point. There, the defense requested, for purposes of cross examination, to inspect the presentence report for an unindicted coconspirator who testified for the government about the existence of the conspiracy. *Id.* at 390–91. The trial court refused, and the Fourth Circuit affirmed. *Id.* The Fourth Circuit's decision was based on a previous iteration of Criminal Rule 32 that it interpreted to prohibit disclosure of presentence reports to third parties "unless lifting confidentiality is required to meet the ends of justice." *Id.* at 391 (quoting *Hancock Bros., Inc. v. Jones*, 293 F. Supp. 1229, 1233 (N.D. Cal. 1968)). The Court determined that compelling reasons for disclosure could arise related to a defendant's innocence or the reliability of a witness; thus, "a proper concern for the rights of criminal defendants and for the integrity of the judicial process requires" disclosure in some cases. *Id.* To identify such cases, the Court adopted a materiality standard and ruled that lower courts should first examine presentence reports *in camera* to identify any exculpatory or impeachment information. *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

The Western District of Virginia has extended *Figurski* to all "records and reports prepared and maintained by the United States Probation Office[,]" implementing a

5

"strong presumption against disclosing such records to third parties." *See In re George*, No. 5:17-mc-02, 2017 WL 1318577, at *1 (W.D. Va. Apr. 10, 2017) (collecting cases recognizing "the policy reasons behind protecting confidentiality apply at all stages of the proceedings between the defendant and the probation office"). To overcome the presumption, a third party in that district must demonstrate that lifting confidentiality is required to serve the ends of justice. *Id.* The court then considers whether the information is obtainable from other sources, consistent with the Guide to Judiciary Policy. *Id.*; *see also In re Varney*, No. 7:22-mc-011, 2022 WL 2532459 (W.D. Va. July 7, 2022). Notably, these cases involved efforts by state prosecutors to secure the assistance and testimony of USPO officers; they did not address a defendant seeking access to files related to his own supervision to assist in his defense.

This Court has not similarly extended *Figurski*. Counsel was unable to identify any case in which this Court addressed a similar request. At the status conference, defense counsel identified *United States v. Elmer Eychaner*, No. 4:17-cr-76, as a case in which counsel was permitted to review certain records in the possession of the USPO. Counsel for the United States separately referred to a SRV case in which the Court permitted disclosure of a copy of the relevant chronology, which we believe is *United States v. Marcel Antonio*, No. 2:17-cr-59. None of the docket entries in either case seem informative on the issues now before the Court.

Finally, regarding out-of-circuit caselaw, Mr. Keller discussed several cases in his underlying motion. Additionally, other courts have addressed the production of USPO documents pursuant to the Jencks Act when USPO officers testify on behalf of the

6

government in a criminal prosecution. *See, e.g.*, ECF Nos. 105, 111, 119, 120, 131, 134 in *United States v. Dwayne Cassell*, No. 00-cr-270 (D.D.C.). In *Cassell*, the supervising probation officer testified during a final revocation hearing that she kept notes during the course of her supervision. The defense orally moved for the production and disclosure of those notes as Jencks materials. The court granted the request over the government's objection. Subsequently, upon request of the USPO, the government filed written motions for orders directing the USPO to disclose relevant documents to both the government and the defense. The court did not use the GJP procedures and summarily granted each request.

Mr. Keller proposes the Court consider his request using the GJP procedures. These procedures are aligned with the interests and considerations identified by the Fourth Circuit and other courts that have weighed similar requests—confidentiality, materiality, availability through other means, and the interests of justice. The following section discusses how the relevant considerations weigh with respect to each category of requested materials.

**II.     The requested files and the reason for each request**

As stated on the record at the Halloween status conference, Mr. Keller makes nine specific requests. These requests are based on the information contained in the confidential Memorandum dated April 5, 2024 that the Court ordered produced in ECF No. 12, as well as the search warrant application and other documents previously disclosed by the government.

1. Any "documentation" and "photos" provided by the anonymous source to Senior Officer Lopez or any other USPO officer.

2. Any notes, memos, or other documentation related to conversations with the anonymous source.

Items (1) and (2) both concern the anonymous source who reportedly informed Senior Officer Lopez about Mr. Keller's alleged use of social media and an unauthorized device. This information bears on the basis or cause for the searches prior to the search warrant—whether there was reasonable suspicion of a violation so as to authorize those searches, as required by Mr. Keller's conditions of supervision and the Fourth Amendment. As Mr. Keller explained in his underlying motion, the parties cannot analyze or litigate the propriety of the searches without this information.

"[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity[.]" *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990)). Only when such a tip is "suitably corroborated" and exhibits "'sufficient indicia of reliability'" can it provide reasonable suspicion. *Id.* (quoting *White*, 496 U.S. at 327). Here, the "anonymous" source appears to have been Mr. Keller's girlfriend, but it is not clear if Senior Officer Lopez knew that at the time. Additionally, the anonymous source reportedly provided documentation and photos as corroboration; Mr. Keller needs to be able to examine those documents to determine whether they provided sufficient means "to test the informant's knowledge or credibility" about her allegations. *See id.* at 271.

Items (1) and (2) thus are material to a potential suppression motion, and their production would further the Court's mission of administering just and fair proceedings.

8

    3. Any document or report prepared related to the "investigative resources" used to link Mr. Keller to a phone number and associated social media accounts.

Item (3) concerns another aspect of the cause for the searches prior to the search warrant. The Memorandum indicates that Senior Officer Lopez "utilized investigative resources available to the U.S. Probation Office" to investigate the allegedly unauthorized phone number Mr. Keller provided to his mental health treatment provider. Somehow, Senior Officer Lopez determined the phone number was registered to Mr. Keller and connected to several social media accounts, but she could not identify specific account names. To determine whether the information acquired through the use of the unidentified "investigative resources" was reliable and a sound basis for suspecting a violation, Mr. Keller needs to know the origin of that information and its limits.

Item (3), too, is therefore material to a potential suppression motion, and its production would also serve the ends of justice.

    4. Any notes, memos, or other documentation related to the "preliminary investigation" of the devices that was undertaken prior to the search warrant.

Item (4) concerns both the manner in which the initial search of the devices was conducted and the basis for the subsequent search warrant. In the statement of probable cause submitted in support of the search warrant application, Special Agent Brewer stated a "preliminary investigation of the devices" took place following their seizure. ECF No. 11-1, at 18. Allegedly, the preliminary investigation located contraband. *Id.* To determine whether this preliminary investigation was consistent with the search authorization granted by the Court and the protections afforded in his conditions of supervision, Mr. Keller must know the extent of the investigation. The manner in which

9

a search is conducted, as well as the scope of its intrusion, inform whether the search was reasonable. *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Additionally, information about the results of the investigation bears on whether there was probable cause for the search warrant.

Item (4) likewise is material and its production would serve the ends of justice.

5. Any communications between Senior Officer Lopez and Cyber-Crimes Specialist Marquis Branch-Jackson about the search of the devices prior to the search warrant.

Item (5) concerns the same topics as item (4). The Memorandum states that Cyber-Crimes Specialist Branch-Jackson had "tentatively agreed to conduct a forensic search on the unapproved smartphone device" at some point prior to the search application. Mr. Keller believes related communications could contain information about the scope of that search, its findings, and potentially the basis for suspecting a violation (either possession of an unauthorized device or the presence of contraband on the device).

Item (5) likewise is material and its production would serve the ends of justice.

6. Any documents or memos related to any approved phone and phone numbers.

Item (6) concerns one of the bases for the probation officer's reasonable suspicion for the search. In the Memorandum, Senior Officer Lopez states she had reason to believe Mr. Keller possessed an unapproved phone because he had no approved phone (or phone number) since "on or about November 7, 2023." However, the Memorandum also notes Mr. Keller gave a phone number to his treatment provider in July 2023 and August of 2023. Defense counsel has reason to believe that Mr. Keller had at least one approved phone and phone number during the course of his supervision. Mr. Keller wishes to

investigate whether, and to what extent, if any, the dates of any past approval may conflict with the assertions in the Memorandum. The Probation Office's chronological notes related to any approved devices and phone numbers is necessary to investigate this matter further.

Item (6) likewise is material and its production would serve the ends of justice.

7. The USPO Search and Seizure Policy approved by the Court in November 2020.

Item (7) potentially concerns both the basis for the search and how it was done. The Memorandum twice refers to the USPO Search and Seizure Policy. To the extent that document informs when the USPO believes there is reasonable suspicion for a violation or how it conducts approved searches, Mr. Keller believes it is material to the constitutional issues at play and that its production would serve the ends of justice.

8. The "details of [Senior Officer Lopez's] interviews with [Mr. Keller] and others" that Senior Officer Lopez sought permission to release to "law enforcement officers and agencies assisting the probation office".

Item (8) potentially concerns the basis for searches (both before and after the search warrant) and, depending on the timing of any interviews, how the pre-warrant searches were done. The Memorandum requested permission to release the details of unspecified interviews with Mr. Keller and other unidentified individuals to law enforcement agencies. Mr. Keller can only speculate about the number of interviews and the information they contain, but to the extent they bear on the Constitutional issues identified, they are material and their disclosure would serve the ends of justice.

9. Any memorandums or notes identifying any other law enforcement officers present during the searches.

Finally, item (9) concerns how the searches were conducted. Defense counsel understands that other law enforcement was present both outside and inside of the house during the search. Whether any of these officers were wearing body-worn cameras, and/or wrote reports documenting their observations, during the search are clearly relevant to the investigation of any constitutional violations that may have occurred during the search. Since the Halloween conference, defense counsel and counsel for the government have discussed this issue and are working to resolve it. Should no resolution occur, the defense will file an appropriate motion at that time. For now, Mr. Keller withdraws this request.

— — — — — — — —

Regarding the factors listed in § 850(a), Mr. Keller submits that all of the above information is in service of the judiciary's mission to administer justice. It is impossible to prevent injustice if one cannot investigate its potential occurrence. There has been no suggestion that the production of these materials would be unduly burdensome on the USPO, or that production would violate any statute, regulation, or ethical rule. Nor does Mr. Keller seek the disclosure of any materials that would reveal the deliberative responsibilities of judicial personnel. To the extent the information is confidential, Mr. Keller is seeking information about his own supervision, not anyone else's.[2] Finally, with

---

[2] Only item (7), the USPO Search and Seizure Policy, does not relate exclusively to Mr. Keller's own case. Without knowing the contents of that document, Mr. Keller cannot state whether it is confidential or why.

the exception of item (9), the information sought cannot be obtained from any other source; it is in the exclusive possession of the USPO.

As a final word, it is worth emphasizing the reality that, in the context of this proceeding, the USPO does not function merely as a neutral arm of the court. Rather, the probation officer occupies a hybrid judicial-prosecutorial function. *See* U.S. Probation, *Probation and Pretrial Services – Mission*, https://www.uscourts.gov/services-forms/probation-and-pretrial-services/history/probation-and-pretrial-services-mission (noting the "dual role" played by officers). In the field, supervising probation officers are considered and operate as law enforcement officers, with the privileges and responsibilities that come along with that designation. They can and often do carry firearms, they have the power to conduct invasive searches, and they have access to law enforcement databases not available to the public or the defense bar. In certain court proceedings like detention hearings, probable cause hearings, and final revocation hearings, probation officers may sit at the prosecution table, in the seat typically occupied by the government's case agent during trial. They testify as government witnesses and have private conversations with prosecutors.

In short, at certain times, the USPO operates in the service of prosecutors, including when it takes the lead on investigating those on supervision like Mr. Keller. Here, that investigation turned into a separate federal prosecution. To assist in his defense and ensure his rights have not been violated, Mr. Keller requests the Court grant him access to the USPO's files, consistent with judiciary policy.

**CONCLUSION**

Mr. Keller respectfully asks this Court to authorize the inspection and copying of the portions of the USPO file that are relevant to his defense. Mr. Keller does not oppose the Court's *in camera* review of the items to determine whether and to what extent disclosure is warranted. The government does not oppose this motion. Indeed, it is the government's burden to establish reasonable suspicion and probable cause to search.

Respectfully submitted,

LUCAS KELLER

By: _____/s/_____
Sean C. Mitchell
Virginia State Bar No. 90922
Amanda C. Conner
Virginia State Bar No. 88317
Attorneys for Lucas Keller
Office of the Federal Public Defender
500 E. Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: 757-457-0800
Facsimile: 757-457-0880
amanda_conner@fd.org
sean_mitchell@fd.org