IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.

LUCAS KELLER,

Defendant.

CRIMINAL ACTION NO. 2:24cr108

TRANSCRIPT OF PROCEEDINGS
**(STATUS HEARING)**
(CONDUCTED VIA WEBEX)

Norfolk, Virginia

December 11, 2024

BEFORE: THE HONORABLE ELIZABETH W. HANES
United States District Judge

APPEARANCES:

UNITED STATES ATTORNEY'S OFFICE
By: Elizabeth M. Yusi
Assistant United States Attorney
Counsel for the United States

FEDERAL PUBLIC DEFENDER'S OFFICE
By: Amanda Catherine Conner
Sean Carlton Mitchell
Assistant Federal Public Defenders
Counsel for the Defendant

(Proceedings commenced at 3:11 p.m.)

THE COURT: Good afternoon, everyone. This is Judge Hanes.

Madam Clerk, can you call our matter.

THE CLERK: Yes, Your Honor.

Case number 2:24cr108, United States of America versus Lucas Keller. Counsel for the government is Elizabeth Yusi, and counsel for defendant is Amanda Conner and Sean Mitchell. Everybody is present and ready to proceed.

THE COURT: All right. Thank you.

I do want to thank you all for your briefing. I do appreciate it. It's been helpful. I did have just a couple of questions that I wanted to clarify, and then based upon that I think we can decide how we want to proceed.

What I understand is that there were a total of nine requests made by the defense; that requests one and eight the government has agreed with; request nine has been withdrawn; and requests two, three, four, five, six, and seven are challenged or disputed by the government.

Ms. Conner, is that still the case? Have I gotten all of that right?

MS. CONNER: Yes, Your Honor.

THE COURT: All right. So, one question that I had is on your request number five, which relates to any

communications between Probation Officer Lopez and Branch-Jackson about the search of devices prior to the search warrant, I think my question regarding that is, did Mr. Branch-Jackson ultimately conduct some form of a search subsequent to these communications?

MS. CONNER: I don't know, Your Honor.

Mr. Mitchell, do you know the answer to that for sure, or is that something that we're not kind of sure about?

MR. MITCHELL: Good afternoon, Your Honor.

So, on that point, it's not completely clear to the defense whether Mr. Branch-Jackson ever became involved in the search. I know the documents indicated that he probably would, or that there was an anticipation that he would be the person to perform the search, but nothing else after that. So, I don't know if the defense knows the answer to that question.

THE COURT: All right. So, as I understand each of these categories, in my mind, I would break them into topically three different types of categories:

The first of which would be information that you're seeking regarding the basis for the search, in other words, whether there was reasonable suspicion that a violation existed;

Then, second, there is some challenges regarding

the manner of the search or the searches;

And then finally, potentially the merit, merit-based discovery regarding either the alleged violations of the supervised release violations or the new charge.

And so, I guess I want to talk to you about that with that framework in mind because -- well, let me ask you this -- I mean, whether this is for Ms. Conner or Mr. Mitchell -- do you understand kind of that breakdown generally, and would you agree that that's consistent with the requests that you've made?

MS. CONNER: Yes, Your Honor, I would. That sounds correct.

THE COURT: Okay. So, let me ask, then, one clarifying question. As to this first category as to whether or not there was an adequate justification or adequate cause for the search, it seems to me that you're generally focused on the initial search conducted by probation as compared to the search of the phones that was executed after or pursuant to a search warrant, but in point four, you do note there is some reference to the basis of the search warrant. And so, are you seeking discovery related to both searches, or is it somewhat limited as to one or the other?

MS. CONNER: Your Honor, definitely seeking any

information related to both searches.

THE COURT: You said both searches, right?

MS. CONNER: Yes, both searches.

THE COURT: Okay. So, related to that, you know, one of the things which the parties did not brief but which to me would be relevant to that question is that there is a standard that generally applies when the defense is seeking discovery to challenge a search warrant.

And here, obviously, there wasn't a search warrant authorized, but the Court through the Memorandum did authorize the search requested by probation, and specifically -- I know you're familiar with the *Franks versus Delaware* case which requires the defense to make a substantial preliminary showing that there was a false statement that was made, that was knowing and intentional or with reckless disregard for the truth that was included in the affidavit. And then under that *Franks* standard, the defense has to satisfy the standard in *Franks* in order to obtain that type of discovery.

I very much appreciated the information regarding the other standards that you referenced, but it seems to me that -- well, specifically as it relates to the actual search warrant itself, because *Franks* is then clearly on point, but also as it relates to the authorization to probation, so that same framework may apply. That was not

briefed by you all, and I guess I wanted to understand whether you wanted an opportunity to address that, because to me that seems like the framework, at least in part, that the Court should be referencing.

Do you have thoughts on that?

MS. CONNER: Yes, Your Honor.

I mean, I've had a couple of matters with *Franks* hearings, and maybe -- I haven't read it in a little while, but my general understanding is that, yes, we have the burden to kind of in order to get the hearing, and usually we have to make that showing in our motion. But as far as having to make a showing to get discovery, you know, generally under Rule 16, we just get the discovery, and then once we look at the discovery, we file a motion, and we have to make a preliminary showing that there was a false statement or, you know, omission that was a material omission.

So, we didn't -- I didn't think to brief that at all because we weren't really at that stage yet. We were just trying to get discovery to assess whether there could be a *Franks* violation or not without knowing -- you know, generally, we would get that information through police reports or, you know, other regular discovery that we would just get from the government automatically under Rule 16. I don't know if that makes sense.

THE COURT: No. It does. I mean, I understand your point. I guess I'm thinking through this idea and whether or not -- I mean, to me, some of what has been requested is -- you're operating under the premise that these requests that speak to the basis for the search would have been turned over in discovery. I'm not sure that -- well, I'm pretty sure that the government would disagree with you, but I'm also not sure that that was briefed either, and it's not the -- in my mind, it was, I mean, because you can ask for discovery through, in that frame. I mean, you're having a hearing, but you don't have to ask for other discovery, and so in my mind that was the first step rather than where you were, in that you thought that some of that information would be turned over prior to any kind of *Franks* challenge. Do you not --

MS. CONNER: I mean, Your Honor, if I may. I'm sorry.

THE COURT: Go ahead.

MS. CONNER: It seems like to me a lot of it would be similar to the reasonable suspicion information that was used to establish reasonable suspicion because, you know, a lot of what's in the search warrant, you know, it's based on information provided to the probation officer, if I recall. And so, like, if anything is different, there are just things we don't know because we don't have the documents or

those communications, but if there was something -- it seems like it would be the same information that we would be seeking for reasonable suspicion to get the very first search, you know, in the very beginning anyway. So, it doesn't seem to me to be different necessarily, but...

MR. MITCHELL: I think particularly since the preliminary search of the probation officer appears to be what led to the search warrant, the law enforcement search warrant, so...

THE COURT: Right. You all, part of what you requested is, for example, you know, this idea of whether the probation officer was right in thinking they had probable or reasonable suspicion. But isn't the Memorandum, and once I have signed the Memorandum, more like a search warrant? Effectively, it doesn't matter what the probation officer thought because once you have a judicial officer who has determined that there is reasonable suspicion, whether or not probation thought they had reasonable suspicion is irrelevant because you have a judicial determination that there is reasonable suspicion. And then just like a search warrant, if you want to try to go behind that judicial determination, you have to make some showing, and so that is my concern is that the -- I agree with you that there is almost like -- certainly, part of this analysis would involve what would the government typically turn over, and

then for anything in which they don't turn over, I think generally you still are viewing or should view the requests similar to or in the same context of rules that are already established, and that's why then I looked at *Franks*.

You know here, I think the government has agreed or not contested your requests as to categories one and eight, and based upon that, I'll agree that those two categories should be turned over.

But my concern was as to the other categories. I still have that question regarding whether or not you've even agreed, for example, that the *Franks* standard should apply in this context, and, if so, whether you have met that standard.

MS. CONNER: Your Honor --

THE COURT: Go ahead.

MS. CONNER: -- I think I definitely would like an opportunity to research whether it applies at the discovery stage. I mean, I think if I am trying to get a *Franks* hearing, I definitely have to make a showing, but I don't know that I have to make a showing to get discovery that I -- I mean, I don't know whether I would have to be able to -- at this point I don't think I have attempted to make a showing about *Franks* to get a *Franks* hearing. So, I have never had the issue come up where I was asked to make a showing to get discovery, to get to investigate whether or

not there might be a potential *Franks* issue. So, I would want an opportunity to research that before --

THE COURT: Right.

MS. CONNER: Yeah.

THE COURT: Okay. And I agree with you that, in that it's not -- I don't think the answer is you get no discovery unless you make a *Franks* showing. I don't think that's the standard.

And certainly, for example, point number six, which relates to the approved phone and/or phone numbers. I could reasonably see that that relates to the merits of the alleged supervised release violation. And it if relates to the merits of the new charge or the supervised release violation, you know, I think you've probably got a strong basis for why that type of discovery would be turned over generally, you know, in any case, in a regular case.

But in this context where some of the discovery that you're seeking is going behind the search warrant to say, what did the investigating officer do, if you think of that happening in not the supervised release context but in a normal kind of run-of-the-mill case, you know, typically you have to think about what do you get and what is the basis for why the government turns that over.

And so my obligation, I think, is to try to hew closely to what the government -- you know, to look at the

    discovery, the government's obligation to turn over that discovery, but not just throw open the flood gates. And I think it's especially important to get it right in this case, one, for Mr. Keller. I mean, this is an important case for him. But given the fact that this issue has not arisen in this court before, I mean, certainly, I think it could be used in future cases or looked to in future cases, and so I would rather take the time to make sure we get it right than to just say, well, yeah, give them everything without considering the effects of that going forward.

So, I thought it would just be helpful to talk to you a bit about what I thought might be helpful. I mean, I know you all are limited on time and have a number of cases from both sides, and so I thought it would be helpful more to talk about my views at the outset so that any additional briefing could be more targeted to that.

Also, I think kind of the second category is the manner of the search and whether or not that either exceeded the Court's justification of the search or was in some way improper. And, again, I think it's the same, it's a similar question, which is, you know, if there is a search warrant executed in the new case, what types of information are typically turned over and based on what, what's the justification? And I think ultimately the question is one of reasonableness. But to me, that's kind of a separate

category of requests made.

All right. Well, let me, just to be clear and so that we can keep things moving, like I said, given the agreement of the parties as to categories one and eight, I'll go ahead and agree to that information and that it be produced to the defense.

Ms. Conner, how much time would you need to file a supplemental position?

MS. CONNER: If I could have a week, so next Friday?

THE COURT: That's fine.

What I am going to do is, I'll set your deadline, given the holidays, for January the 3rd.

And then, Ms. Yusi, would two weeks to respond be adequate for you, so the 17th?

MS. YUSI: It would, Your Honor, thank you.

THE COURT: Okay. So, I think just once each would be fine.

That's everything that I had.

Ms. Conner, I know that you filed a motion to continue given the medical issues of Mr. Keller. Do you have an update regarding that?

MS. CONNER: I don't know what we've learned. We've learned some things since we last -- since I wrote him. I think he's supposed to have an appointment with a

neuro trauma specialist, I think this month.

Is that correct, Sean? It was December?

MR. MITCHELL: It is, yes.

MS. CONNER: And as of when we met with the medical staff at Chesapeake Jail, I think it was last week, they still were waiting on an appointment from the neurosurgeon to determine whether he needs brain surgery. So, there is really no -- there has been no change. We've asked for updated medical records, and we don't have them yet. So, I guess I would say everything is sort of still the same, so I may need to push off the -- I mean, I think the trial date is fine for now, but I guess our regular motions deadline, we may need that extended if we're still litigating the discovery.

THE COURT: All right. What was the deadline that I set? Do you have that in front of you?

MR. MITCHELL: 15 January.

MS. CONNER: Yes.

THE COURT: Okay. Given the current, what I just set for briefing, I'll go ahead and just -- what's our trial date? I'm sorry. I don't have that in front of me.

MR. MITCHELL: 29 April.

THE COURT: Okay. So, I'll go ahead and move your motions date to February 14th.

MS. CONNER: Okay.

MR. MITCHELL: Thank you, Your Honor.

THE COURT: Okay. Ms. Yusi, anything, any clarification you seek or anything else you think we need to address?

MS. YUSI: Not at this point, Your Honor. I'll look at the briefing and respond accordingly.

THE COURT: All right.

From defense?

MS. CONNER: No, Your Honor. Thank you.

THE COURT: All right.

MR. MITCHELL: No, Your Honor. Thank you.

THE COURT: Very well. Thank you all. I appreciate your time, and I hope everyone has a nice holiday if I don't see you before then.

MS. YUSI: Thank you very much.

MS. CONNER: Thank you.

MR. MITCHELL: Thank you.

(Proceedings concluded at 3:37 p.m.)

CERTIFICATION

15

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

____________________/s/_____________________

Jill H. Trail

December 19, 2024

JILL H. TRAIL, Official Court Reporter