IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.  Criminal No. 2:24cr108

LUCAS KELLER,

    Defendant.

### DEFENDANT'S SECOND SUPPLEMENTAL MEMORANDUM OF LAW re: MOTION FOR ACCESS TO RELEVANT PORTIONS OF THE UNITED STATES PROBATION OFFICE'S FILE

Lucas Keller, through counsel, has requested permission to inspect and copy portions of the USPO file that are relevant to his federal prosecution. ECF No. 11; *see also* ECF Nos. 15, 16 (first round of supplemental briefing). To date, the Court has ordered the production of the USPO Memorandum that sought authorization to search Mr. Keller's residence, vehicle, papers, and electronic devices; any documentation and photos provided by the anonymous source to any USPO officer; and the details of Senior Officer Lopez's interviews with Mr. Keller and others referred to in the Memorandum. ECF Nos. 12, 23. The defense has received information and materials responsive to these topics from the USPO.

On December 16, the Court ordered further supplemental briefing addressed to the remaining categories of information sought by the defense. ECF No. 23. Specifically, the Court requested briefing on whether this information would typically be provided in discovery by the government and, if not, whether some other mechanism could compel disclosure. *Id.*

1

### I. Discovery in criminal cases

Discovery in federal criminal cases is predominantly a function of the Federal Rules of Criminal Procedure. *See, e.g.,* Fed. R. Crim. P. 16, 26.2, & 32.1. Due process requires additional disclosures by the government in certain situations. *See Brady v. Maryland*, 373 U.S. 83 (1963) (exculpatory material); *Giglio v. United States*, 405 U.S. 150 (1972) (impeachment material). A court may also order additional disclosures pursuant to its inherent powers. *See* Wright & Miller, *Fed. Prac. & Proc.* § 254 (discussing authorities and stating courts have held Rule 16 "does not limit their 'inherent power' to order discovery that goes beyond what the rule authorizes"); *see, e.g., United States v. Salad*, 779 F. Supp. 2d 503 (E.D. Va. 2011) (ordering the government to maintain possession of a seized yacht and transport it across the Atlantic Ocean for inspection by the defense).

Of central importance, Rule 16(a)(1)(E)(i) requires the government to permit, upon request, the inspection and copying of documents and objects within its control when "the item is material to preparing the defense[.]" To establish materiality under this provision, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)). This "is not a heavy burden[,]" requiring only "some abstract logical relationship to the issues in the case . . . ." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (quoting *United States v. Caicedo-Llanos*, 960 F.2d 158, 164 n.4 (D.C. Cir. 1992)). "[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation,

2

corroborating testimony, or assisting impeachment or rebuttal."[1] *Caro*, 597 F.3d at 621 (quoting *Lloyd*, 992 F.2d at 351).

Under this standard, both exculpatory and inculpatory evidence may be material. A defendant in possession of inculpatory evidence may alter the quantum of proof in his favor "by preparing a strategy to confront damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998); *see also United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) (noting a defendant may "alter his trial strategy" based on inculpatory evidence or opt to "seek a plea agreement instead of going to trial").

## II. Whether the requested categories of information would typically be provided in discovery

Mr. Keller previously requested nine categories of information, which he identified and numbered in earlier briefing. *See* ECF No. 15. The Court ordered the production of categories One and Eight, and Mr. Keller withdrew his request for category Nine. Based on the materials provided by the USPO pursuant to the Court's most recent order, Mr. Keller now withdraws his requests for categories Two, Three, and Six.

---

[1] The government offered this standard as the threshold for securing *in camera* review of potential *Brady* evidence. ECF No. 16, at 5 (quoting *Caro*, 597 F.3d at 621). *Brady* uses a different definition of materiality, however; evidence is "material" under *Brady* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Savage*, 885 F.3d 212, 221 (4th Cir. 2018) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Caro*, 597 F.3d at 621 n.15 ("[W]e stress that 'materiality' in Rule 16(a)(1)(E)(i) differs from 'materiality' under *Brady* . . . .").

3

Three requests remain—categories Four, Five, and Seven. Mr. Keller submits the remaining categories would fall within the scope of Rule 16, were they in the government's possession, because they are material to preparing the defense. Each category of information would illuminate either the scope of the pre-warrant searches that were conducted in this case or the scope of the search authorization. This information is necessary to determine whether the pre-warrant searches complied with the search authorization, as required by the Fourth Amendment, and to inform a potential suppression motion on that topic.

4. <u>Any notes, memos, or other documentation related to the "preliminary investigation" of the devices that was undertaken prior to the search warrant</u>

This category of information concerns the way USPO officers conducted the pre-warrant search of Mr. Keller's electronic devices—in other words, the scope of the "preliminary investigation." Such information is material because a search may violate the Fourth Amendment by exceeding the scope authorized by a search warrant or other authorization. *Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."); *see also United States v. Jones*, 31 F.3d 1304, 1314 (4th Cir. 1994) (reading *Horton* to require the exclusion of "items seized by officers while acting outside the scope of the search warrant").

"Whether a search exceeds the scope of a search warrant is an issue [courts] determine through an objective assessment of the circumstances surrounding the

4

issuance of the warrant, the contents of the search warrant, and *the circumstances of the search.*" *United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir. 2002) (emphasis added), *amended on other grounds by United States v. Hitchcock*, 298 F.3d 1021 (9th Cir. 2002). Such information, then, plainly is material to the defense. Information about the scope and circumstances of a search informs whether there has been a Fourth Amendment violation that may require the suppression of evidence; it is material in the same way that information about the search authorization itself would be. The government would never challenge the defense's ability to examine a search warrant, and information about whether the actual search adhered to the terms of its authorization should be similarly unobjectionable. Indeed, defense counsel cannot recall a case in which the defense did not have access to information about a search—whether police reports detailing the investigative steps taken, body-worn camera footage of the search itself, or documentation of the procedures and search terms used during the search of an electronic device.

Here, the search warrant application noted that a "preliminary investigation" of an electronic device seized from Mr. Keller found suspected contraband on the device. In its response to the Court's most recent order, the USPO produced a Chronos entry about that search using that same phrase—"preliminary investigation"—that did not otherwise detail what investigative steps were taken. To the extent the USPO has more information that is responsive to this issue, Mr. Keller maintains his request for it and submits that it would be produced as a matter of course if it were in the government's possession.

> 5. <u>Any communications between Senior Officer Lopez and Cyber-Crimes Specialist Marquis Branch-Jackson about the search of the devices prior to the search warrant</u>

The same reasoning extends to this category of information. The search Memorandum indicated that, prior to the search application, there were communications between Senior Officer Lopez and Cyber-Crimes Specialist Branch-Jackson regarding the forensic investigation of any unapproved devices. Like notes, memos, and other documentation about that "investigation," such preliminary communications stand to illuminate the scope of the search that took place. They are material to the defense because the Fourth Amendment required the scope of that search to match the scope of its authorization, and Mr. Keller must be able to investigate whether that constitutional requirement was strictly adhered to.

The government, for its part, has objected to the production of internal USPO notes and communications, noting that several courts in other jurisdictions have rejected requests for USPO materials absent an indication that the government planned on using the materials against the defendant. *See* ECF No. 16, at 3–4. These rulings are inapt when, as here, a person seeks information about the scope of a search and its authorization. That manner of information is not the sort that the government would ever use against a defendant because it only stands to hurt the government's case—either the searches were reasonable, in which case nothing changes, or they were not, in which case evidence may be suppressed. Moreover, these decisions uniformly rest on abbreviated reasoning and an unreasonable reading of Criminal Rule 32.1(b)(2)(B), which provides that a person facing the revocation of supervised release is entitled to the "disclosure of the evidence

against" him or her. *See, e.g.*, *United States v. Tham*, 884 F.2d 1262, 1265 (9th Cir. 1989) (ruling, in three sentences, that neither Rule 32.1 nor due process was violated when the probation file was not used as evidence and the defendant had the opportunity to cross-examine the probation officer); *United States v. Ornelas*, No. 1:22-cr-47, 2024 WL 1979287, at *1 (W.D. Tex. May 2, 2024) (relying on earlier authorities and erroneously reading Criminal Rule 26.2's requirement for the production of witness statements in the possession of a party into Rule 32.1, which contains no similar textual requirement); *United States v. Hardiman*, No. 08-cr-80094, 2021 WL 4072714, at *1 (S.D. Fla. Aug. 23, 2021) (relying on earlier authorities with no independent analysis of Rule 32.1).

Mr. Keller would agree that any preliminary communications regarding pre-warrant searches are likely less informative on this issue than materials documenting the search procedures, such as Chronos entries or memos. To the extent the latter are not available, however, Mr. Keller maintains his request for material communications.

7. <u>The USPO Search and Seizure Policy approved by the Court in November 2020</u>

The search authorization in this case expressly incorporated the USPO Search and Seizure Policy approved by the Court in November 2020. On page four of the search memorandum, Senior Officer Lopez represented that "[a]ny search would be conducted [] pursuant to" those policies. Those policies, therefore, help delineate the authorized scope of the pre-warrant searches. As such, they are also material to the defense. Mr. Keller must know both the extent of what was done and the limits of what was approved to investigate whether his constitutional rights were respected. *See Hitchcock*, 286 F.3d at

1071 (noting "the contents of the search warrant" inform the Fourth Amendment analysis).

While this case did not involve an inventory search, in that context, the government frequently provides discovery concerning law enforcement policies and procedures about inventory searches because such information is critical to the Fourth Amendment analysis. *See, e.g.*, *United States v. Treisman*, 71 F.4th 225, 234–35 (4th Cir. 2023) (stating warrantless inventory searches are reasonable when, *inter alia*, the search is "conducted pursuant to standard police procedures" and discussing the agency's standard procedures). The same is true when, as here, the search authorization incorporated limits set by the agency's policies.

In opposing this request, the government speculates that the Policy has "sensitive information" such as risk and safety considerations. ECF No. 16, at 4. While Mr. Keller's belief that the Policy contains search procedures is informed by the Policy's incorporation into the search authorization, the government's assertion about its contents seems to be nothing more than a hunch. Through *in camera* review, the Court is in the best position to determine whether the disclosure of any part of the Policy is warranted or risks undue interference with the USPO's operations.

Mr. Keller maintains that he does not need to make any preliminary showing that the USPO departed from the Policy during the pre-warrant searches. Were that the standard for materiality, it would be nearly impossible to meet. Only rarely will a person know enough about the contents of a document or recording he cannot access to be able to preemptively raise specific issues related to those contents. *See United States v. Muniz-*

8

*Jaquez*, 718 F.3d 1180, 1184 (9th Cir. 2013). In *Muniz-Jaquez*, the Ninth Circuit reversed a lower court ruling that dispatch tapes related to an arrest were not discoverable under Rule 16. The panel chastised the district court for accepting speculation about the tapes from the government while assuming the defense's concerns were without merit:

> In rejecting the materiality showing, the district court referred to the 'spotty' nature of the tapes. Problematically, it did so without listening to them. The district court also improperly relied on Agent Woodford's supposed credibility and the lack of any challenge to his testimony. In doing so, the district court assumed the point in dispute. Without access to the tapes, Muniz–Jaquez had little material with which to challenge the agent's testimony. The district court had no basis for finding the defendant's showing of materiality to be speculative.

*Id.* The Court should find this reasoning persuasive. Without access to the Policy and information about the scope of the pre-warrant searches, Mr. Keller cannot know whether those searches exceeded the bounds authorized by the Court and cannot make any focused challenges to the pre-warrant searches.

### III. If the requested categories would not typically be provided in discovery, whether some other mechanism could compel disclosure

Mr. Keller has nothing further to say with respect to categories Four and Five. Regarding the USPO Search and Seizure Policy, Mr. Keller notes such policies are routinely provided by law enforcement agencies, even in the absence of any case-specific disclosure obligation. Indeed, such policies are routinely made available to the public. For example, the Newport News Police Department publishes its operational policies and procedures online, including its investigative procedures related to its constitutional and court-imposed obligations. *See* City of Newport News, *Police Department: Operational Policy*, https://www.nnva.gov/2287/Operational. Likewise, the Hampton Police

9

Division makes its policies available to the public, with limited redactions. *See, e.g.*, Hampton Police Division, *Policy & Procedure: Execution of Search Warrant* (May 25, 2021), https://www.hampton.gov/DocumentCenter/View/37982/707-Execution-of-Search-Warrants-PDF. So, even if Rule 16 did not require the production of an agency's search policies—and it does—in a normal case, a person could access that information anyway.

## CONCLUSION

Mr. Keller respectfully submits that information about the scope of a search and the scope of its authorization, including a law enforcement agency's search policy, is material under Rule 16. If the requested information were in the government's possession, it would be produced during discovery. The Court should order its production by the USPO.

Respectfully submitted,

LUCAS KELLER

By:     /s/
    Sean C. Mitchell
    Virginia State Bar No. 90922
    Amanda C. Conner
    Virginia State Bar No. 88317
    Attorneys for Lucas Keller
    Office of the Federal Public Defender
    500 E. Main Street, Suite 500
    Norfolk, Virginia 23510
    Telephone: 757-457-0800
    Facsimile: 757-457-0880
    amanda_conner@fd.org
    sean_mitchell@fd.org